UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

BRIAN TAYLOR, Individually and on Behalf :    Civil Action No.
of All Others Similarly Situated,            :
                                             :    <u>CLASS ACTION</u>
                    Plaintiff,               :
                                             :    CLASS ACTION COMPLAINT
            vs.                              :
                                             :
BANK OF AMERICA CORPORATION and              :
MERRILL LYNCH, PIERCE, FENNER &              :
SMITH INCORPORATED,                          :
                                             :
                    Defendants.              :
                                             :    <u>DEMAND FOR JURY TRIAL</u>
———————————————————— x

By and through his undersigned counsel, Brian Taylor ("Plaintiff") brings this class action against defendant Bank of America Corporation ("BofA") and its wholly owned subsidiary, defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill") (collectively, "Defendants"), upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, including, but not limited to, review and analysis of: (a) documents created and distributed by Defendants; (b) public filings made by BofA with the U.S. Securities and Exchange Commission ("SEC"); (c) press releases disseminated by Defendants; and (d) news articles, websites, and other publicly available information concerning Defendants. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## SUMMARY OF THE ACTION

1.     Plaintiff brings this class action to recover damages arising out of Defendants' unlawful conduct related to the Merrill Lynch Bank Deposit Program ("Sweep Program"). Under the Sweep Program, Defendants swept idle customer cash into interest-bearing accounts at banks selected by, and affiliated with, Defendants.

2.     The cash sweep accounts were highly lucrative for Defendants and their affiliate banks but paid unreasonably low, below-market interest rates to customers. As such, Defendants used the Sweep Program to generate massive revenue for themselves at the expense of their customers.

3.     Defendants' use of the Sweep Program to enrich themselves by paying unreasonably low interest rates to customers breached their fiduciary duties and contractual obligations and violated several state and federal laws including the Racketeer Influenced and Corrupt Organizations Act ("RICO Statute") and the Investment Advisers Act of 1940 ("Advisers Act").

4.      Indeed, on January 17, 2025, the SEC announced that it had charged Merrill with "willfully" violating the Advisers Act in connection with the Sweep Program.  The SEC found that Merrill "swept billions of dollars in client cash into its [Sweep] Program annually," "earned advisory fees on [Sweep] Program assets," and "was credited with revenue from affiliated banking entities based in part on the spread earned by banking affiliates on the [Sweep] Program."  Despite these "significant financial benefits" to Merrill and its banking affiliates, "the yields advisory clients received from the [Sweep] Program were often significantly lower than the yields clients could have received had Merrill Lynch made other options available as part of the cash sweep program."

5.      As a result, the SEC determined that Merrill failed to adopt and implement policies and procedures to consider their clients' best interest when evaluating potential sweep options for cash held in advisory accounts and to ensure that cash held in an advisory account is properly managed by financial advisers consistent with a client's investment profile.  Merrill agreed to pay a civil penalty of $25 million to settle the charges and undertook remedial actions including increasing sweep interest rates paid to advisory clients.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d)(2) and (6), because: (a) there are 100 or more class members; (b) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (c) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states.  This Court also has subject matter jurisdiction under 18 U.S.C. §1964(c), 28 U.S.C. §1331, and 15 U.S.C. §80b-14 because Plaintiff brings claims arising under the RICO Statute, 18 U.S.C. §1962, and the Advisers Act, 15 U.S.C. §§80b-1-80b-21.

7.     This Court has personal jurisdiction over Defendants because, during the relevant time period, Defendants had offices in, did sufficient business in, had sufficient contacts with, and intentionally availed themselves of the laws and markets of New York through the promotion, sale, marketing, distribution, and operation of their products and services.

8.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because, during the relevant time period, Defendants transacted business and had offices in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

9.     In connection with the challenged conduct, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails and interstate telephone communications.

PARTIES

**Plaintiff**

10.     Plaintiff Brian Taylor is a citizen of Utah.  During the relevant time period, Plaintiff held a traditional brokerage account with Merrill.  Uninvested cash Plaintiff held in his account was swept into the banks that Defendants selected in their discretion at the unreasonably low interest rates alleged herein pursuant to the Sweep Program.

**Defendants**

11.     Defendant Bank of America Corporation is a Delaware corporation headquartered at Bank of America Corporate Center, 100 North Tryon Street, Charlotte, North Carolina 28255. BofA is a financial services company that conducts business throughout the United States, overseeing assets totaling $3.2 trillion.  BofA is the parent company and control person of Defendant Merrill.

12.     Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated is a Delaware corporation headquartered at One Bryant Park, New York, New York 10036.  Merrill is a broker-

dealer and a Registered Investment Advisor that offers brokerage and investment advisory services to its nationwide client base. Merrill acts as its customers' agent for the establishment, maintenance, and operation of the Sweep Program. Merrill is a wholly owned subsidiary of, and controlled by, Defendant BofA.

## SUBSTANTIVE ALLEGATIONS

**Background on Defendants' Sweep Program**

13.     BofA is one of the largest financial services firms in the country. BofA's wholly owned subsidiary, Merrill, operates as a wealth management division of BofA. During the relevant time period, Merrill offered brokerage and investment advisory services to customers nationwide. These services included the Sweep Program. The terms and conditions of the Sweep Program were set forth in Merrill's Client Relationship Summary and Client Relationship Agreement ("Account Agreement"),[1] Best Interest Disclosure Statement ("Disclosure Statement"),[2] CMA Financial Service Cash Management Account Disclosures ("CMA Disclosures"),[3] and Sweep Program Guide[4] (collectively, "Sweep Program Documents"), which were posted on Merrill's public website. The Sweep Program Documents were governed by New York state law.

---

[1]    Merrill, *Client Relationship Summary* (Mar. 22, 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/ClientRelationshipAgreement.pdf.

[2]    Merrill, *Best Interest Disclosure Statement* (Apr. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Regulation-Best-Interest-Disclosure-Statement_RBIDISC.pdf.

[3]    Merrill, *CMA Financial Service Cash Management Account* (July 2024), https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/CashManagementAccountCMADisclosuresandAccountAgreement.pdf.

[4]    Merrill, *Sweep Program Guide* (Aug. 2024), https://olui2.fs.ml.com/publish/content/application/pdf/GWMOL/Sweep-Program.pdf.

14.    Customers in the Sweep Program included investment advisory clients enrolled in Merrill's "Investment Advisory Programs," who were thus subject to the terms and conditions of the Sweep Program Documents.[5]

15.    Under the Sweep Program, Merrill automatically swept eligible clients' uninvested cash balances into interest bearing deposit accounts ("Deposit Accounts") at one or more of the following banks affiliated with BofA and Merrill: Bank of America, N.A. ("BANA"), Bank of America California, N.A. ("BA-CA"), and Merrill Lynch Bank and Trust Company (Cayman) Limited (collectively, "Merrill Affiliated Banks" or "Bank Affiliates").

16.    The Sweep Program Documents provided that Merrill acted as agent for customers in the Sweep Program, stating: "In the United States, Merrill acts as a broker (i.e., agent) for its private clients as well as its corporate and institutional clients. . . . . Through BANA, and other bank Affiliates (Bank Affiliates), Merrill provides access to banking services, including lending and cash sweep services."[6]  Similarly, the Sweep Program Documents stated that "Merrill Lynch is acting as agent and messenger for its customers for the deposits at BANA and/or BA-CA."[7]

---

[5]    *See, e.g.*, *Client Relationship Summary*, *supra* note 1 at 2, 5, 13; *Sweep Program Guide*, *supra* note 4 at 4-5; *CMA Disclosures*, *supra* note 3 at 3-4, 13; *see also In the Matter of Merrill Lynch, Pierce, Fenner & Smith Incorporated*, Investment Advisers Act of 1940, Release No. 6829, Administrative Proceeding, File No. 3-22433*, *Order Instituting Administrative and Cease-and-Desist Proceedings Pursuant to Sections 203(e) and 203(k) of the Investment Advisers Act of 1940 and Section 15(b) of the Securities Exchange Act of 1934, Making Findings, and Imposing Remedial Sections and a Cease-and-Desist Order (SEC Jan. 17, 2025), https://www.sec.gov/files/litigation/admin/2025/ia-6829.pdf ("SEC Cease-and-Desist Order") at ¶2 ("From January 2022 through April 2024 . . . [the Sweep Program] was the only cash sweep option for most advisory clients at Merrill Lynch.").

[6]    *Account Agreement*, *supra* note 1; *Disclosure Statement*, *supra* note 2.

[7]    *CMA Disclosures*, *supra* note 3.

17.    The Sweep Program Documents further stated that the Deposit Accounts in the Sweep Program "will bear a rate of interest that has been established for, and in light of the features of, the Sweep Program.  The rate of interest for such deposit accounts is periodically set and reset by the Merrill Affiliated Banks in their discretion."[8]    Merrill had input on the interest rates established by the Merrill Affiliated Banks.[9]

**Defendants Reaped Significant Benefits from the Sweep Program to the Detriment of Their Customers, Who Were Paid Unreasonably Low Interest Rates**

18.    The Sweep Program provided several highly lucrative financial benefits to Defendants and their Bank Affiliates.  First, "Merrill and [their] Bank Affiliates benefit financially when [customers] hold any cash balances in the bank deposit accounts affiliated with the Cash Sweep Program.  Merrill receives payments from our Bank Affiliates on a per account basis for each account that sweeps to one of [its] Bank Affiliates relating to offering and supporting the Cash Sweep Program."[10]

19.    Second, "Merrill Advisors and [Merrill Financial Solutions Advisors] receive increased compensation based on achieving a number of strategic objectives, including, among other activities, the growth in their clients' participation in bank sweep deposits and sweep money market funds, checking and savings accounts, the Preferred deposit product, loans, mortgages and margin lending."[11]

---

[8]    *Sweep Program Guide*, *supra* note 4.

[9]    SEC Cease-and-Desist Order, *supra* note 5 at ¶2.

[10]    *Disclosure Statement*, *supra* note 2.

[11]    *Id.*

20.     Third, through Sweep Program deposits, Merrill's Bank Affiliates "receive a stable, cost-effective source of funding.  They use these bank deposits to fund current and new lending, investment and other business activities.  The participation of the Bank Affiliates in the Cash Sweep Program increases their respective deposits and accordingly overall profits."[12]

21.     Moreover, Defendants were able to maximize their financial gain from the Sweep Program by paying customers unreasonably low rates, creating an admitted "conflict of interest" with customers:

> Bank profitability is determined, in large part, by the "spread" they earn on the deposits – the difference between the interest paid on the bank deposits and other amounts paid to Merrill related to these deposits, on the one hand, and the interest or other income earned on loans, investments and other assets which may be funded in part by bank deposits, on the other hand.  The greater the amount of cash balances maintained in your accounts (which could be as a result of a recommendation from your financial advisor) that is swept into a bank deposit account affiliated with the Cash Sweep Program and ***the lower the interest rate paid on the related bank deposit, the more our Bank Affiliates benefit***.[13]

22.     Due to these adverse financial incentives, Defendants failed to negotiate and secure reasonable sweep interest rates for customers in the Sweep Program.  As defined in the Oxford English Dictionary, the term "reasonable" is synonymous with "fair" and "equitable."

23.     The United States Department of Labor defines a "reasonable" rate of interest as "a rate of interest determinable by reference to short-term rates available to other customers of the bank, those offered by other banks, those available from money market funds, those applicable to short-term instruments such as repurchase agreements, or by reference to a benchmark such as

---

[12]     *Id.*

[13]     *Id.*  The SEC also recognizes that "cash sweep programs" are a "common source[] of conflicts of interest."  U.S. Securities and Exchange Commission, Staff Bulletin:  Standards of Conduct for Broker-Dealers and Investment Advisers Conflicts of Interest (Aug. 3, 2022), https://www.sec.gov/tm/iabd-staff-bulletin-conflicts-interest.

sovereign short term debt (*e.g.*, in the U.S., treasury bills), all in the jurisdiction where the rate is being evaluated."[14]

24.    Similarly, the United States Internal Revenue Service defines an "arm's length interest rate" as "a rate of interest which was charged, or would have been charged, at the time the indebtedness arose, in independent transactions with or between unrelated parties under similar circumstances."[15]  Thus, an interest rate is reasonable if it is based on a fair market valuation.

25.    In contrast, the Sweep Program paid miniscule, below-market interest rates as low as 0.01% depending on the amount deposited.[16]  These rates were ***significantly*** below several objective benchmarks of reasonableness:

- **Competitors' Deposit Accounts**.  Defendants' sweep interest rates were far below fair market value, as demonstrated by the rates paid by their competitors.  According to the FDIC, the national rate of interest paid by money market deposit products offered by insured depository institutions and credit unions currently averages 0.66%.[17]  Moreover, competitors offering FDIC-insured sweep accounts

---

[14]    Grant of Individual Exemptions; Deutsche Bank AG, 68 Fed. Reg. 34646 (June 10, 2003).

[15]    26 C.F.R. §1.482-2(a)(2).

[16]    Merrill, *Cash Management Solutions* (Jan. 21, 2025), https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/ICCRateSheet.pdf.  Merrill assigned account tiers to Sweep Program customers based on the amounts they deposited.  *Id.*  The current annual percentage yields are 0.01% for Tiers 1-2 (<$1M), 0.05% for Tier 3 ($1M to <$10M), 0.15% for Tier 4 (>=$10M), and 4.20% for Tier 5 (limited to certain eligible retirement plan and investment advisory accounts).  *Id.*  Merrill Lynch added Tier 5 during the first half of 2024, likely due to SEC scrutiny discussed below.  Prior to the addition of Tier 5, the annual percentage yields were 0.01% for Tiers 1-2 (<$1M), 0.30% for Tier 3 ($1M to <$10M), and 1.06% for Tier 4 (>=$10M).  *See* Merrill, *Cash Management Solutions* (Mar. 22, 2024), https://web.archive.org/web/20240324180205/https://olui2.fs.ml.com/Publish/Content/application/pdf/GWMOL/ICCRateSheet.pdf.

[17]    Federal Deposit Insurance Corporation, *National Rates and Rate Caps* (Dec. 16, 2024), https://www.fdic.gov/national-rates-and-rate-caps.  The FDIC defines the national rate of interest as "the average of rates paid by all insured depository institutions and credit unions for which data is available, with rates weighted by each institution's share of domestic deposits."  *Id.*  Informa Research Services, a company that specializes in compiling business data, also found that FDIC-insured United States banks consistently pay significantly higher interest rates than Defendants on

similar to those in the Sweep Program pay even higher rates. For example, competitor Moomoo's rate currently is 4.1%,[18] Webull's rate is 3.75%,[19] Vanguard's rate is 3.65%,[20] Fidelity's rate is 2.19%,[21] and Robert W. Baird's rate is between 1.45% and 2.89%.[22]

- **Defendants' Other Interest-Bearing Accounts**. Further, the sweep interest rates paid by the Sweep Program were far lower than the interest rates paid by other products offered by Defendants outside of the Sweep Program. For example, Defendants' Insured Savings Account paid a rate of 2.59% and Defendants' Preferred Deposit account paid a rate of 3.67%.[23]

- **Federal Funds Rate**. The sweep interest rates in the Sweep Program were also far below the U.S. Federal Reserve's benchmark federal funds rate, currently at 4.25% to 4.50%.[24]

- **Treasury Bill Rates**. The sweep interest rates in the Sweep Program were far below U.S. Treasury bill rates, including the three-month and one-year rates currently at 4.22% and 4.02%, respectively.[25]

---

deposit accounts, including average rates ranging from 0.19% to 0.36% from August 2017 through March 2019.

[18] Moomoo Financial Inc., *Boost your uninvested cash with 4.1% APY*, https://www.moomoo.com/us/invest/cashsweep (last visited Jan. 22, 2025).

[19] Webull, *Webull High-Yield Case Management*, https://www.webull.com/cash-management (last visited Jan. 22, 2025).

[20] Vanguard, *Earn 3.65% APY with the Vanguard Cash Plus Account*, https://investor.vanguard.com/accounts-plans/vanguard-cash-plus-account (last visited Jan. 22, 2025).

[21] Fidelity, *Fidelity Individual Retirement Accounts (IRA)*, https://digital.fidelity.com/prgw/digital/fdic-interest-rate/ira (last visited Jan. 22, 2025).

[22] Baird, *Cash Sweep Program*, https://www.rwbaird.com/cashsweeps/ (last visited Jan. 22, 2025).

[23] *Cash Management Solutions*, *supra* note 16.

[24] Federal Reserve, *Economy at a Glance – Policy Rate* (Dec. 19, 2024), https://www.federalreserve.gov/economy-at-a-glance-policy-rate.htm.

[25] Federal Reserve Bank of St. Louis, *3-Month Treasury Bill Secondary Market Rate, Discount Basis* (Jan. 22, 2025), https://fred.stlouisfed.org/series/DTB3; Federal Reserve Bank of St. Louis,

- **Repurchase Rate**. The sweep interest rates in the Sweep Program were well below the overnight interest rate at which the U.S. Federal Reserve repurchases securities from private banks (*i.e.*, the repo rate), which is currently 4.25%.[26]

26.     These benchmarks individually and collectively demonstrated that Defendants' Sweep Program interest rates were unreasonable.  As a result, Plaintiff and the Class (defined below) suffered damages by receiving far lower interest payments than they would have received if the Sweep Program interest rates were reasonable.

**Defendants Breached Their Contractual Obligations and Fiduciary Duties Related to the Sweep Program**

27.     Under the Sweep Program Documents, Merrill agreed to act as its customers' agent in connection with the Sweep Program, and, thus, was contractually obligated to act in its customers' best interests in seeking and negotiating reasonable interest rates under the Sweep Program.  In other words, reasonableness was implicit in the Program Documents and governed the sweep interest rates paid to customers in the Sweep Program.

28.     However, as discussed above, Merrill violated this contractual duty by failing to act in its customers' best interests when it provided customers with unreasonably low sweep interest rates compared to several objective benchmarks.

29.     Merrill's conduct also violated its fiduciary duties.  As an investment advisor, Merrill owed fiduciary duties to its clients under the Advisers Act.[27]  In particular, Merrill was

---

*1-Year Treasury Bill Secondary Market Rate, Discount Basis* (Jan. 22, 2025), https://fred.stlouisfed.org/series/DTB1YR.

[26]   Federal Reserve Bank of St. Louis, *Overnight Reverse Repurchase Agreements Award Rate: Treasury Securities Sold by the Federal Reserve in the Temporary Open Market Operations* (Jan. 22, 2025), https://fred.stlouisfed.org/series/RRPONTSYAWARD.

[27]   *See* Securities and Exchange Commission Interpretation Regarding Standards of Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019) (interpreting Section 206 of the Advisers Act, 15 U.S.C. §80b-6).

obligated to "serve the best interest of its client and not subordinate its client's interest to its own" and was not permitted to "place its own interests ahead of the interests of its client."[28]

30.    Merrill owed similar duties of care under Regulation Best Interest, which required it to act in its retail customers' best interests and prohibited it from placing its own interests ahead of its retail customers' interests.[29]

31.    Merrill violated these fiduciary duties under the Advisers Act and Regulation Best Interest by failing to act in its customers' best interests, and by placing its own interests ahead of its clients, when it provided customers with unreasonably low sweep interest rates compared to several objective benchmarks.

32.    Merrill also violated the Advisers Act by failing to "[a]dopt and implement written policies and procedures reasonably designed to prevent violation, by you and your supervised persons, of the [Advisers] Act and the rules that the [SEC] has adopted under the [Advisers] Act."[30]

33.    Indeed, on January 17, 2025, the SEC announced that it had charged Merrill with "willfully" violating the Advisers Act in connection with the Sweep Program.[31]  The SEC found that Merrill "swept billions of dollars in client cash into its [Sweep] Program annually," "earned advisory fees on [Sweep] Program assets," and "was credited with revenue from affiliated banking entities based in part on the spread earned by banking affiliates on the [Sweep] Program."[32]

---

[28]    *Id.*

[29]    Securities and Exchange Commission, Regulation Best Interest: The Broker-Dealer Standard of Conduct, 84 Fed. Reg. 33318, 33320, 17 C.F.R. §240.15l-1 (July 12, 2019).

[30]    17 C.F.R. § 275.206(4)-7.

[31]    SEC Cease-and-Desist Order, *supra* note 5.

[32]    *Id.* at ¶7.

34.    Despite these "significant financial benefits" to Merrill and its Bank Affiliates, "the yields advisory clients received from the [Sweep] Program were often significantly lower than the yields clients could have received had Merrill Lynch made other options available as part of the cash sweep program."[33]   In particular, from January 2022 through April 2024, the disparity in yields rose as high as "almost 400 basis points" and "grew as interest rates rose."[34]

35.    As a result, the SEC concluded that, in violation of Section 206(4) of the Advisers Act and Rule 206(4)-7 thereunder, Merrill "failed to adopt and implement reasonably designed written policies and procedures (i) to consider the best interests of clients when evaluating and selecting which cash sweep program options to make available, including during periods of rising interest rates; and (ii) concerning the duties of Merrill Lynch financial advisors in managing client cash in advisory accounts."[35]

36.    Merrill agreed to pay a civil penalty of $25 million to settle the charges and undertook "remedial acts" including increasing the rates paid to advisory clients and adopting and implementing enhanced supervisory procedures targeted at advisory client accounts with significant cash holdings.[36]

37.    In a January 17, 2025 press release announcing the charges, Sanjay Wadhwa, Acting Director of the SEC's Division of Enforcement, stated, "Cash sweep programs impact

---

[33]   *Id.* at ¶2.

[34]   *Id.* at ¶¶2, 6.

[35]   *Id.* at ¶3.

[36]   *Id.* at ¶13; §IV.C.

nearly all advisory clients, who often pay advisory fees on assets held in these accounts."[37]  "These actions reinforce that advisory firms must have reasonably designed policies and procedures to consider their clients' best interest when evaluating potential sweep options for cash held in advisory accounts and to ensure that cash held in an advisory account is properly managed by financial advisers consistent with a client's investment profile."[38]

38.    Merrill Lynch's parent company, BofA, has also acknowledged these issues.  In July 2024, BofA added new language to its Form 10-Q stating that "the rates paid on uninvested cash in investment advisory accounts that is swept into interest-paying bank deposits" are among the "risks and uncertainties" that BofA investors should consider.   The same language appeared in BofA's most recent Form 10-Q issued in October 2024.

**Defendants Made Material Misrepresentations and Omissions Regarding the Sweep Program**

39.    In the Sweep Program Documents, Defendants made material omissions by failing to disclose that, as discussed above, Defendants established and used the Sweep Program to enrich themselves and their Bank Affiliates by paying unreasonably low interest rates to customers in order to increase Defendants' and their Bank Affiliates' financial benefits from the Sweep Program.

40.    The Sweep Program Documents also misleadingly stated that "***from time to time***" the Deposit Account interest rates "will ***likely be*** lower than yields on certain money market funds

---

[37]    U.S. Securities and Exchange Commission, *SEC Charges Pair of Wells Fargo Advisory Firms and Merrill Lynch with Compliance Failures Relating to Cash Sweep Programs* (Jan. 17, 2025), https://www.sec.gov/newsroom/press-releases/2025-16.

[38]    *Id.*

and other cash alternatives"[39] and that the Deposit Account interest rates"[w]ill *likely be* lower than the rates available on other deposit type accounts at the Merrill Affiliated Banks and other banking institutions and yields on cash alternatives, such as money market funds."[40]   These statements were misleading and omitted material facts because, in reality, the Deposit Account interest rates were *always* significantly below market interest rates available on other deposit-type accounts and cash alternatives.

41.    Moreover, Defendants' statements about potentially *lower* interest rates did not excuse their contractual and fiduciary obligations to pay *reasonable* interest rates, as described above.   These statements must be construed harmoniously with Defendants' contractual and fiduciary obligations.

42.    Defendants also misleadingly claimed that they "adopted various policies and procedures reasonably designed to prevent the cash sweep arrangement and other business arrangements from affecting the nature of the advice we and our financial advisors provide"[41] when, in fact, such cash sweep arrangements actually harmed customers by causing Defendants to automatically sweep customer deposits into Deposit Accounts paying miniscule, below-market interest rates, and Defendants failed to adopt and implement adequate policies and procedures concerning the cash sweep arrangements, in violation of the Advisers Act.

**Defendants Violated the RICO Statute**

43.    Defendants violated the RICO Statute through their implementation of the Sweep Program.

---

[39]    *Disclosure Statement*, *supra* note 2; *Account Agreement*, *supra* note 1.

[40]    *Sweep Program Guide*, *supra* note 4.

[41]    *Account Agreement*, *supra* note 1.

44.    Merrill and the Merrill Affiliated Banks were an "enterprise" within the meaning of the RICO Statute.  Through Merrill and the Merrill Affiliated Banks, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud customers, including Plaintiff and the Class.  Defendants used the Sweep Program to benefit and enrich themselves and their Bank Affiliates through, among other things, the payment of unreasonably low interest rates to customers on money deposited into the Sweep Program.

45.    The Sweep Program involved commercial activities across state lines, including Defendants' distribution of the Sweep Program Documents to customers, and Defendants' receipt and transfer of money deposited by customers.

46.    Through the Sweep Program, Defendants conducted and participated in a pattern of racketeering activity within the meaning of the RICO Statute ("Racketeering Acts"). Defendants' Racketeering Acts included indictable, predicate offenses under 18 U.S.C. §§1341 and 1343 based on Defendants' fraudulent use of interstate mail and wire communications, including posting the materially false and misleading Sweep Program Documents on Merrill's public website and distributing them to customers throughout the country.

47.    The Racketeering Acts were related in that they were taken in furtherance of Defendants' Sweep Program scheme.  The Racketeering Acts occurred, and continue to occur, regularly and continuously over a multi-year period during the operation of the Sweep Program.

48.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including posting the

materially false and misleading Sweep Program Documents on Merrill's public website and distributing them to customers throughout the country.

49.    As Sweep Program customers, Plaintiff and the Class were damaged by Defendants' Racketeering Acts due to Defendants' payment of unreasonably low interest rates on the money customers deposited into the Sweep Program.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff brings this action against Defendants as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a Class consisting of all persons who had cash deposits or balances in the Sweep Program ("Class"). Excluded from the Class are Defendants, officers and directors of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51.    The Class members are so numerous that their individual joinder is impracticable. While the exact number of Class members can only be determined by appropriate discovery, Plaintiff believes that Class members number in the thousands, and are geographically dispersed, because BofA oversees $3.2 trillion in client assets worldwide.

52.    Plaintiff's claims are typical of Class members' claims because Plaintiff's cash deposits were subject to the Sweep Program, and, therefore, Plaintiff's claims, and those of all other Class members, arose from the same wrongful conduct by Defendants alleged herein.

53.    Plaintiff will fairly and adequately protect the interests of the Class members and has retained counsel experienced and competent in complex class action litigation. Plaintiff has no interests that are contrary to, or in conflict with, the members of the Class that Plaintiff seeks to represent.

54.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class or a risk of adjudications that, as a practical matter, would be dispositive of the interests of other Class members who were not parties to the adjudications or would substantially impair or impede the ability of such Class members to protect their interests.

55.     Because Defendants acted or refused to act on grounds that apply generally to the Class, final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

56.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

57.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

        (a)     whether Defendants violated the laws as alleged herein;

        (b)     whether Defendants owed fiduciary duties to Plaintiff and members of the Class in connection with the Sweep Program;

(c)    whether Defendants breached their fiduciary duties to Plaintiff and members of the Class in connection with the Sweep Program;

(d)    whether Defendants breached their contractual obligations to Plaintiff and members of the Class in connection with the Sweep Program;

(e)    whether Defendants violated the Advisers Act;

(f)    whether Defendants violated the RICO Statute;

(g)    whether Defendants made material misrepresentations and/or omissions in connection with the Sweep Program;

(h)    whether Defendants were unjustly enriched by their wrongful conduct;

(i)    whether the members of the Class sustained damages as a result of the alleged wrongful conduct by Defendants, and, if so, the appropriate measure of damages; and

(j)    whether the members of the Class are entitled to attorneys' fees and costs and, if so, the appropriate amount of attorneys' fees and costs.

## COUNT I

### BREACH OF FIDUCIARY DUTY
### AGAINST ALL DEFENDANTS

58.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

59.    Merrill was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  BofA owns and controls Merrill.

60.    Defendants owed fiduciary duties to Plaintiff and the Class, including duties to act in the best interests of, and deal fairly and honestly with, Plaintiff and the Class.

61.    Defendants violated their duty to act in the best interests of Plaintiff and the Class by using the Sweep Program to enrich themselves at the expense of customers who were paid unreasonably low interest rates, as described above.

62.    Defendants also violated their duty to deal fairly and honestly with Plaintiff and the Class by making material misrepresentations and omissions in the Sweep Program Documents, as described above.

63.    Further, Defendants violated their duty to act with reasonable care to verify the truthfulness of the information set forth in the Sweep Program, which were materially misleading and omitted material facts for the reasons described above.

64.    As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and the Class suffered damages and are entitled to recover such damages from Defendants.

## COUNT II

### VIOLATION OF THE INVESTMENT ADVISERS ACT OF 1940
### AGAINST ALL DEFENDANTS

65.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

66.    Merrill is registered as an investment adviser under the Advisers Act.  BofA owns and controls Merrill.

67.    For the reasons alleged herein, Merrill violated Section 206 of the Advisers Act in connection with its operation of the Sweep Program by failing to serve the best interests of its clients, by placing its own interests ahead of the interests of its clients, and by failing to adopt and implement written policies and procedures reasonably designed to prevent violations of the Advisers Act.  *See* Securities and Exchange Commission Interpretation Regarding Standards of

Conduct for Investment Advisers, 84 Fed. Reg. 134, 17 C.F.R. §276 (July 12, 2019); 17 C.F.R. § 275.206(4)-7.

68.    The Account Agreement should be deemed void pursuant to Section 215(b) of the Advisers Act, which provides that every

> contract made in violation of any provision of this title and every contract heretofore or hereafter made, the performance of which involves the violation of, or the continuance of any relationship or practice in violation of any provision of this title, or any rule, regulation, or order thereunder, shall be void (1) as regards the rights of any person who, in violation of any such provision, rule, regulation, or order, shall have made or engaged in the performance of any such contract, and (2) as regards the rights of any person who, not being a party to such contract, shall have acquired any right thereunder with actual knowledge of the facts by reason of which the making or performance of such contract was in violation of any such provision.

69.    Accordingly, Plaintiff seeks rescission of the Account Agreement and restitution of the consideration given pursuant to its purported terms.

## COUNT III

## BREACH OF CONTRACT
## AGAINST ALL DEFENDANTS

70.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

71.    Plaintiff and Class members were parties to the Sweep Program Documents with Merrill.  The Sweep Program Documents set forth the contractual terms and conditions of the Sweep Program.  BofA owned and controlled Merrill.

72.    Pursuant to the Sweep Program Documents, Merrill was contractually obligated to act as agents on behalf of Plaintiff and the Class, and, thus, was contractually obligated to act in Plaintiff's and the Class' best interests in seeking and negotiating reasonable sweep interest rates under the Sweep Program.

73.    Merrill breached its contractual obligations by failing to provide Plaintiff and the Class with reasonable interest rates on their deposits in the Sweep Program.  Rather, the sweep interest rates provided by Merrill were below market and unreasonably low.  As such, Merrill denied Plaintiff and the Class the full benefit of their bargain under the Sweep Program Documents.

74.    As a direct and proximate result of Merrill's breach of contract, Plaintiff and the Class sustained damages.

**COUNT IV**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST ALL DEFENDANTS**

75.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

76.    Plaintiff and Class members were parties to the Sweep Program Documents with Merrill.  The Sweep Program Documents set forth the contractual terms and conditions of the Sweep Program.  BofA owns and controls Merrill.

77.    Implicit in the Sweep Program Documents were duties of good faith and fair dealing.

78.    Defendants breached their duties of good faith and fair dealing by failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Sweep Program.  Rather, the interest rates provided by Defendants were below market and unreasonably low.  As such, Defendants denied Plaintiff and the Class the full benefit of their bargain under the Sweep Program Documents.

79.    As a direct and proximate result of Defendants' breaches of the implied covenants of good faith and fair dealing, Plaintiff and the Class sustained damages.

- 21 -

**COUNT V**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT
ORGANIZATIONS ACT, 18 U.S.C. §1962(c)-(d),
AGAINST ALL DEFENDANTS**

80.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

81.     This claim arises under 18 U.S.C. §1962(c)-(d) of the RICO Statute, which provides in relevant part:

> (c)     It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

> (d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

82.     At all relevant times, BofA was a "person" because it was capable of holding a legal or beneficial interest in property.

83.     Merrill and the Merrill Affiliated Banks were an enterprise engaged in interstate commerce.  Through Merrill and the Merrill Affiliated Banks, Defendants knowingly and intentionally devised and operated the Sweep Program as a scheme to defraud investors. Defendants used the Sweep Program to enrich themselves by paying unreasonably low interest rates to Sweep Program customers.

84.     Defendants conducted and participated in multiple, related Racketeering Acts for the purpose of implementing the Sweep Program.  The Racketeering Acts, which occurred, and continue to occur, regularly and continuously during the operation of the Sweep Program over a multi-year period, constitute a "pattern of racketeering activity."  The Racketeering Acts were made possible by the regular, repeated, and continuous use of the employees, facilities, and services of Merrill.

- 22 -

85.    Defendants' Racketeering Acts included the following indictable, predicate offenses:

(a)    **Mail Fraud**: Defendants violated 18 U.S.C. §1341 by sending and receiving materials via United States mail and commercial interstate carriers, including the Sweep Program Documents, for the purpose of conducting the fraudulent Sweep Program scheme through Merrill and the Merrill Affiliated Banks.  As described above, the Sweep Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

(b)    **Wire Fraud**: Defendants violated 18 U.S.C. §1343 by transmitting and receiving writings and sounds by means of interstate wire communication for the purpose of conducting the fraudulent Sweep Program scheme through Merrill and the Merrill Affiliated Banks.  The writings included the Sweep Program Documents, which were posted on Merrill's public website.  As described above, the Sweep Program Documents contained material misrepresentations and omissions knowingly and intentionally made by Defendants for the purpose of defrauding customers.

86.    Defendants conducted the Racketeering Acts as part of a common conspiracy to violate 18 U.S.C. §1962(c) of the RICO Statute.  Defendants, with knowledge and intent, agreed to the overall objectives of the conspiracy and, through the Racketeering Acts, participated in a common course of conduct in furtherance of the Sweep Program scheme, including mailing and transmitting the Sweep Program Documents to customers.

87.    Plaintiff and the Class suffered damages by reason of Defendants' payment of unreasonably low interest rates on their Sweep Program deposits, in violation of 18 U.S.C. §1962(c)-(d).

88.     Plaintiff's and the Class' injuries were directly and proximately caused by Defendants' racketeering activity.

## COUNT VI

## NEGLIGENCE
## AGAINST ALL DEFENDANTS

89.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

90.     During the relevant time period, Merrill was the agent of customers enrolled in the Sweep Program, including Plaintiff and the Class.  Merrill also facilitated the Sweep Program by accepting payments from customers through its online investment platform, which were swept into the Sweep Program.  BofA owned and controlled Merrill.

91.     Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

92.     Defendants' conduct with respect to the Sweep Program, as described above, was negligent.  By failing to provide Plaintiff and the Class with fair and reasonable sweep interest rates on their cash sweep balances in the Sweep Program, Defendants breached their duty to act with reasonable care.

93.     Defendants' negligence directly and proximately caused harm to Plaintiff and the Class.

## COUNT VII

## NEGLIGENT MISREPRESENTATIONS AND OMISSIONS
## AGAINST ALL DEFENDANTS

94.     Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

95.    Merrill was the agent of, and investment advisor to, customers enrolled in the Sweep Program, including Plaintiff and the Class.  BofA owns and controls Merrill.

96.    Defendants owed Plaintiff and the Class a duty to act with reasonable care in connection with their cash sweep balances deposited and maintained in the Sweep Program.

97.    Defendants negligently made material misrepresentations and omissions in the Sweep Program Documents, as described above, which were posted on Merrill's website.

98.    Plaintiff and the proposed Class justifiably relied on Defendants' Sweep Program Documents and accordingly deposited and maintained cash balances in the Sweep Program to their detriment.

99.    Defendants' material misrepresentations and omissions directly and proximately caused harm to Plaintiff and the members of the proposed Class.

## COUNT VIII

### UNJUST ENRICHMENT
### AGAINST ALL DEFENDANTS

100.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

101.    Defendants financially benefited from the unlawful acts alleged herein by paying Plaintiff and the Class unreasonably low and below-market interest payments on their Sweep Program balances.  These unlawful acts caused Plaintiff and the Class to suffer injury and monetary loss.

102.    As a result of the unlawful acts alleged herein, Defendants were unjustly enriched at the expense of Plaintiff and the Class.

- 25 -

103.    Defendants have received, and are holding, funds belonging to Plaintiff and the Class, which in equity Defendants should not be permitted to keep but should be required to refund to Plaintiff and the Class.

## COUNT IX

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW SECTION 349 AGAINST ALL DEFENDANTS

104.    Plaintiff incorporates each of the foregoing paragraphs as though fully set forth herein.

105.    Defendants' acts and practices with respect to the Sweep Program, as described above, constitute unlawful, unfair, misleading, and deceptive business acts and practices in violation of §349 of New York's General Business Law ("GBL").

106.    Defendants' misleading and deceptive business acts and practices with respect to the Sweep Program adversely impacted Plaintiff and the Class, and therefore constitute consumer-oriented conduct under GBL §349, which resulted in direct harm to Plaintiff and the Class.

107.    Accordingly, Plaintiff and the Class seek appropriate relief under GBS §349, including injunctive relief and damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief and judgment, as follows:

A.      Declaring that this action is a proper class action, certifying the Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as Class Counsel for the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Awarding compensatory damages in favor of Plaintiff and the Class for all damages sustained as a result of Defendants' wrongdoing, in amounts to be proven at trial, including interest thereon;

C.      Awarding treble damages in favor of Plaintiff and the Class;

D.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees;

E.      Ordering rescission of the Client Agreement and restitution of all fees and other benefits received by Defendants thereunder; and

F.      Such other and further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  January 23, 2025

ROBBINS GELLER RUDMAN
  & DOWD LLP
STEPHEN R. ASTLEY
ANDREW T. REES
RENE A. GONZALEZ
SCOTT I. DION


*s/ Stephen R. Astley*

STEPHEN R. ASTLEY

225 NE Mizner Boulevard, Suite 720
Boca Raton, FL  33432
Telephone:  561/750-3000
sastley@rgrdlaw.com
arees@rgrdlaw.com
rgonzalez@rgrdlaw.com
sdion@rgrdlaw.com

ADEMI LLP
SHPETIM ADEMI
GURI ADEMI
3620 East Layton Avenue
Cudahy, WI  53110
Telephone: 414/482-8000
sademi@ademilaw.com
gademi@ademilaw.com

*Attorneys for Plaintiff*